**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)**

| | | |
|---|---|---|
| SHARON WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON METROPOLITAN AREA | ) | |
| TRANSIT AUTHORITY, | ) | Civil Case No.: GLS-21-2373 |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION**

Pending before this Court is "Defendant Washington Metropolitan Area Transit Authority's Motion to Dismiss Counts III, IV, and VI of the Complaint and/or Motion for Summary Judgment," filed by Defendant Washington Metropolitan Area Transit Authority ("Defendant" or "WMATA") (ECF No. 57) ("Motion"), which Plaintiff Sharon Williams ("Plaintiff") opposes.[1] The issues have been fully briefed, *see* ECF Nos. 59, 60, and this Court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth below, the Motion is **GRANTED**.

---

[1] The parties have consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c). (ECF Nos. 23-24, 32-33).

I.   **BACKGROUND**

A.  **Procedural Background**

On March 4, 2021, Plaintiff filed her Complaint in the Circuit Court for Montgomery County, Maryland, alleging six Counts of negligence against First Transit, Inc. ("First Transit") and Defendant. (ECF No. 6, "Complaint"). In the Complaint, the Plaintiff alleges the following: Count I, negligence, as to First Transit, in violation of Maryland law; Count II, negligence, as to First Transit, in violation of Maryland law; Count III, negligence, as to WMATA, in violation of Maryland law; Count IV, negligence, as to WMATA, in violation of Maryland law; Count V, vicarious liability, as to First Transit; and Count VI, vicarious liability, as to WMATA. (*Id.*).

On September 16, 2021, Defendant removed the case to this Court and filed its Answer. (ECF Nos. 1-2). On September 22, 2021, First Transit likewise filed an Answer. (ECF No. 13). On October 29, 2021, this case was referred to the undersigned for all further proceedings. (ECF No. 33).

On January 14, 2022, Defendant filed its Amended Answer. (ECF No. 37). On January 27, 2022, Plaintiff stipulated to the dismissal of Counts I, II, and V against First Transit, while preserving Counts III, IV, and VI against Defendant. (ECF No. 38). After stipulating to the dismissal of Counts I, II, and V, the parties filed several motions to extend the Scheduling Order deadlines, which the Court granted. (*See, e.g.*, ECF Nos. 40, 44, 46).

On November 14, 2022, Defendant filed a "Notice of Intent to File Motion for Summary Judgment." (ECF No. 51). On December 21, 2022, the undersigned held a telephonic status conference with the parties and set the briefing schedule related to the proposed Motion for Summary Judgment. (ECF No. 56). Defendant filed its Motion on January 31, 2023, asking this Court either to dismiss the Complaint for lack of subject matter jurisdiction, or in the alternative,

to grant summary judgment on the merits. (ECF No. 57). On February 28, 2023, Plaintiff filed her

Opposition, and on March 17, 2023, Defendant filed its Reply. (ECF Nos. 59-60).

### B. Factual Background[2]

On or about March 8, 2018, the Plaintiff was riding a MetroAccess bus in Silver Spring,

Maryland. (Complaint, ¶ 3). Also riding the MetroAccess bus was a wheelchair-bound passenger

("Passenger"). (*Id.*, ¶¶ 3-4). During boarding, the Passenger's wheelchair was improperly secured

to its "seat" by the Defendant's bus driver ("Bus Driver"), who wheeled the Passenger into place.

(*Id.*, ¶ 13). As a result, the Passenger was able to freely move about the bus in his wheelchair. (*Id.*).

While in transit, the Passenger decided to approach the Plaintiff and began to assault her.

(*Id.*). The Passenger first grabbed the purse around the Plaintiff's waist and pulled at it, and then

proceeded to hit and choke the Plaintiff as she was trying to escape from the Passenger. (*Id.*). After

eventually managing to escape from the Passenger, the Plaintiff immediately told the Bus Driver

that she was assaulted, and a supervisor was called to the scene. (*Id.*).

The Bus Driver, however, took no action to restrain the Passenger or re-secure the

Passenger's wheelchair, thus failing to remove the Plaintiff from the dangerous situation. (*Id.*, ¶

17). Instead, the Bus Driver exited the MetroAcess bus and left the Plaintiff alone with the

Passenger, who had just assaulted the Plaintiff and caused severe injuries to the Plaintiff's back,

shoulders, and other parts of her body. (*Id.*, ¶¶ 15, 17-18). Once alone with the Plaintiff, the

Passenger moved toward the Plaintiff for the second time and resumed his assault. (*Id.*). The

Passenger once again pulled at the Plaintiff's purse, while also kicking and hitting the Plaintiff.

---

[2] Unless otherwise noted, the facts are taken from the Complaint, ECF No. 6, and are construed in the light most favorable to the non-moving party, which in this case is the Plaintiff. This Court therefore assumes the Plaintiff's version of the facts to be true. *Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011); *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

(*Id.*). Due to this second attack, the Plaintiff suffered additional severe, painful, and permanent physical injuries. (*Id.*, ¶ 20).

## II.    STANDARDS OF REVIEW

### A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

Pursuant to Fed. R. Civ. P. 12(b)(1), a party may move to dismiss a complaint for lack of subject matter jurisdiction. A Rule 12(b)(1) motion may allege that sovereign immunity serves as a jurisdictional bar against the claim. *Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 205 (4th Cir. 2002). When a defendant challenges subject matter jurisdiction, the plaintiff bears the burden of establishing that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

A Rule 12(b)(1) challenge to subject matter jurisdiction may proceed "in one of two ways:" first, by mounting a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction; or second, a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (alteration in original) (citation omitted). In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In a factual challenge, however, a "district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Id.* Finally, a district court has significant leeway in considering documents outside of the pleadings when deciding whether it has subject matter jurisdiction. *See Stahlman v. United States*, 995 F. Supp. 2d 446, 451 (D. Md. 2014) (finding that "the Court may look beyond the pleadings and the jurisdictional allegations of the complaint" to determine whether it has subject matter jurisdiction) (internal citation omitted).

### B.  Motion for Summary Judgment[3]

Motions for summary judgment shall be granted only if there are no genuine issues as to any material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987) (internal citation omitted). The burden can be satisfied through the submission of, e.g., pleadings, depositions, answers to interrogatories, admissions, and affidavits. *Celotex Corp.*, 477 U.S. at 323; *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). To defeat motions for summary judgment, on the other hand, the nonmoving party cannot simply cast "metaphysical doubt" on the material facts, but rather must provide specific facts demonstrating a genuine issue for trial. *Matsuhita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing Fed. R. Civ. P. 56(e)). However, a mere scintilla of evidence is insufficient to create an issue of material fact. *See Barwick*, 736 F.2d at 958-59 (citing *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966)).

The Court must construe the facts and documentary materials submitted by the parties, including the credibility and weight of particular evidence, in the light most favorable to the party opposing the motions. *Masson v. N.Y. Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson*, 477 U.S. at 255). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

---

[3] The Court has reviewed the discovery materials produced in this case, including depositions of Plaintiff and the Bus Driver. The undersigned finds that the discovery materials provide a different sequence of events than what is alleged in the Complaint. In this Memorandum Opinion, the Court accepts all facts presented in the Complaint as true. However, the Court finds that its ruling would not be changed even if it were to rely on the evidence, viewed in the light most favorable to Plaintiff, produced during discovery.

### III.    DISCUSSION

In support of its Motion, the Defendant advances two primary arguments. First, pursuant to Fed. R. Civ. P. 12(b)(1), Plaintiff's claims are barred by the doctrine of sovereign immunity. Second, and alternatively, pursuant to Fed. R. Civ. P. 56, Plaintiff's claims fail as a matter of law because: (1) Plaintiff offers no evidence of the relevant standard of care; (2) Plaintiff is unable to establish that Defendant had the requisite notice regarding the actions of the Passenger; and (3) Plaintiff is unable to establish a causal relationship between the Defendant's alleged breach of duty and Plaintiff's injuries. (Motion, pp. 5-14).

In her Opposition, Plaintiff first argues that her claims are not barred by the doctrine of sovereign immunity because the Bus Driver's "failure to secure" the Passenger relates to a ministerial function, for which Defendant has waived sovereign immunity because: (a) Plaintiff's "failure to secure" claim does not involve law enforcement activity; and (b) WMATA has a policy that prescribes a specific course of action that WMATA employees must follow when WMATA's customers are assaulted, meaning that the instant dispute does not involve a "discretionary act." (Opposition, pp. 4-8). Next, Plaintiff argues that summary judgment is inappropriate because: (1) Plaintiff has established the relevant standard of care; (2) Plaintiff has established notice regarding the second assault, because Plaintiff informed the Bus Driver of the first assault; and (3) there are disputed material facts regarding causation, so it is improper to grant summary judgment as to Plaintiff's claims at this procedural juncture. (*Id.*, pp. 8-17).

Immediately below, the Court analyzes the sovereign immunity issue.

### A.   <u>Sovereign Immunity–The Law</u>

Maryland, Virginia, and the District of Columbia created WMATA via an interstate compact ("the Compact"), so that WMATA would provide transportation services in the

Washington D.C. metro area. *Delon Hampton & Assocs. v. Wash. Metro. Area Transit Auth.*, 943 F.2d 355, 357-59 (4th Cir. 1991). The Compact established WMATA as an interstate agency and instrumentality of each signatory. *Id.* at 359. Thus, WMATA "enjoys the same rights and privileges as a state, including sovereign immunity." *Bailbey v. Wash. Metro. Area Transit Auth.*, Civ No. CBD-15-1731, 2016 WL 1391820, at *5 (D. Md. Apr. 8, 2016); *see also Smith*, 290 F.3d at 206.

WMATA enjoys a unique type of sovereign immunity with respect to certain claims. *Pierce v. Wash. Metro. Area Transit Auth.*, Civ. No. DKC-09-1917, 2010 WL 4485826, at *3 (D. Md. Nov. 9, 2010). However, its immunity is not absolute. The extent of WMATA's sovereign immunity is outlined in Section 80 of the Compact, which states, in pertinent part that:

> The Authority shall be liable for its contracts and for its torts and those of its directors, officers, employees, and agents committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function.

Md. Code Ann., Transp. § 10–204(80) (2010). Put another way, WMATA retains its immunity for torts arising out of the exercise of its governmental functions but waives its sovereign immunity for torts it commits when exercising its proprietary, i.e., non-governmental functions. *Smith, supra*, at 206; *Proctor v. Wash. Metro. Area Transit Auth.*, 990 A.2d 1048, 1058-59 (2010).

To determine what constitutes a "governmental act," courts engage in a two-part analysis. In part one of the analysis, a court must determine if the challenged conduct was a "quintessential governmental function," such as conduct involving law enforcement. *See Smith*, *supra*, 290 F.3d at 207; *Doe v. Wash. Metro. Area Transit Auth.*, 453 F. Supp. 3d 354, 363-65 (D.D.C. 2020) (finding that the plaintiff's claims concerning WMATA's negligent failure to take action in response to a passenger's potentially criminal behavior "fall squarely within the purview of

WMATA's law enforcement authority[,]" which is a quintessential governmental function). If so, WMATA's sovereign immunity bars the claim. *See Smith*, *supra*, 290 F.3d at 207.

However, if an act or conduct is not quintessentially governmental, i.e., it is proprietary (non-governmental), a court must proceed to the second step of the analysis and determine whether WMATA engaged in a discretionary act or a ministerial act. *Id.* Courts have found that a "discretionary act" is analogous to an agency's governmental functions for which it retains immunity. *Id.* Conversely, a "ministerial act" falls within an agency's proprietary functions for which it waives immunity. *Id.* at 208. Courts have explained that a discretionary act involves "judgment, planning, or policy decisions," whereas a non-discretionary, i.e., a ministerial act, involves the "enforcement or administration of a mandatory duty at the operational level." *Pierce*, *supra*, at *4 (quoting *KiSKA Constr. Corp. v. Wash. Metro. Area Transit Auth.*, 321 F.3d 1151, 1159 (D.C. Cir. 2003).

To distinguish a discretionary act from a proprietary one, a court asks two questions. First, whether a "statute, regulation, or policy **specifically** prescribes a course of action for an employee to follow." *Pierce*, *supra*, at *4 (emphasis added) (quoting *KiSKA Constr. Corp.*, 321 F.3d at 1159). If a course of action is prescribed, then the challenged conduct is not discretionary and WMATA is not immune. *Id.* Second, a court examines if the exercise of discretion is "grounded in social, economic, or political goals." *Pierce*, at *4. If WMATA's exercise of discretion is "grounded in social, economic, or political goals, then sovereign immunity applies." *Tinsley v. Wash. Metro. Area Transit Auth.*, 55 A.3d 663, 674 (Md. 2012). Such activity falls within the "discretionary function exception." *Smith*, 290 F.3d at 207. Put another way, "day-to-day operational decisions of government are entitled to immunity … so long as the choices are susceptible to policy analysis." *Id.* at 208 (citation omitted).

### B.  Analysis of Defendant's Sovereign Immunity Argument

In this case, the Defendant asserts that Plaintiff's claims regarding Defendant's failure to protect the Plaintiff are barred by sovereign immunity because they relate to law enforcement activity which is a quintessential governmental function. (Motion, pp. 5-7).

Plaintiff, relying principally on *Washington Metropolitan Area Transit Authority v. O'Neill*, 633 A.2d 834, 835 (D.C. 1993), counters that sovereign immunity does not bar her claims. According to Plaintiff, "a transit operator's duty to address threats of safety on a transit bus do[es] not fall within WMATA's [law enforcement] function." (Opposition, pp. 5-8). In *O'Neill*, the plaintiff was severely beaten by two individuals while riding on a WMATA bus. Prior to attacking the plaintiff, the two individuals had been shouting obscenities and harassing other passengers. The plaintiff sued WMATA, alleging that its bus driver was negligent in failing to: (1) ask the individuals who attacked plaintiff to leave the bus; and (2) activate a silent alarm. *See O'Neill*, 633 A.2d at 838-39. WMATA argued that it was entitled to sovereign immunity because the bus driver's allegedly negligent failures related to law enforcement activity. The court found that neither of the allegedly negligent failures related to law enforcement activity. Thus, WMATA was not entitled to sovereign immunity. The *O'Neill* court found that particular actions do not fall within the scope of law enforcement activity merely because they "would have the effect of protecting passengers from criminal assaults." *O'Neill*, 633 A.2d at 839. Thus, as Plaintiff here asserts, the *O'Neill* court adopted a narrow view of what qualifies as a law enforcement function. *Id.*

The Court finds that this out-of-district opinion is inconsistent with the approach adopted by at least one judge in the District of Maryland. The Court finds instructive *Burns v. Washington Metropolitan Area Transit Authority*, 488 F. Supp. 3d 210 (D. Md. 2020). In *Burns*, the plaintiff

alleged that he was traveling home on a WMATA-operated train when a group of juveniles assaulted him, causing severe and permanent physical injuries. Prior to assaulting the plaintiff, this group of juveniles had attacked and robbed other WMATA train riders, and WMATA had prohibited those juveniles from using WMATA trains. The plaintiff asserted that WMATA negligently failed to "provide [adequate] security services or protect him from the harm he suffered in the attack." *Burns*, 488 F. Supp. 3d at 216. In finding that the plaintiff's claims were barred by sovereign immunity, the court adopted a broad, inclusive view of what falls within the scope of law enforcement activity, and thus what qualifies as a quintessential governmental function. Specifically, the *Burns* court found that:

> [The p]laintiff's three tort claims, for negligence, gross negligence, and intentional infliction of emotional distress, allege that WMATA did not adequately provide security services or protect him from the harm he suffered in the attack. *Protection of customers' security is within the purview of law enforcement*, and the WMATA Compact specifically authorizes the establishment of a police force to provide such services.
>
> …
>
> [The p]laintiff's [three] tort claims, similarly, relate to WMATA's alleged failure to act appropriately *in response to its knowledge* of his assailants' prior conduct. His tort claims are likewise barred by sovereign immunity, then, because they implicate the quintessential governmental function of law enforcement.

*Burns*, 488 F. Supp. 3d at 216-17 (emphasis added).

The Court also finds instructive *Doe v. Washington Metropolitan Area Transit Authority*, 453 F. Supp. 3d 354 (D.D.C. 2020). In *Doe*, the plaintiff was riding on a WMATA train when she was sexually assaulted by a man, John Hicks, who threatened her with a knife. One week prior to this sexual assault, WMATA passengers reported Mr. Hicks for masturbating while riding a WMATA train, but WMATA did not alert its customers or prevent Mr. Hicks from using its trains. The plaintiff asserted, in part, that WMATA was negligent in failing to "take proper steps to ensure

the safety of the passengers on its trains." *Doe*, 453 F. Supp. 3d at 360. WMATA moved to dismiss the complaint, contending that it was entitled to sovereign immunity because plaintiff's challenges to WMATA's conduct "following Hicks's masturbation incidents [concern] WMATA's police activity, which is a quintessential governmental function…." *Id.* at 365.

The court found that WMATA was entitled to sovereign immunity because the plaintiff's claims involved WMATA's alleged failure to take action in response to Hicks's criminal conduct, which, as a result, harmed the plaintiff. In describing how the plaintiff's claims implicated law enforcement activity, the court held as follows:

> [T]he bulk of the claims that Doe brings in this lawsuit fail to clear the sovereign-immunity bar at the outset, because *any alleged negligent failure of the agency to respond to potentially criminal behavior by one of its customers* in a certain manner—even one that, according to Doe, the general duty of reasonable care requires—involves the exercise of a quintessential governmental function of the agency.

> *Id.* (emphasis added).

In this case, the Plaintiff alleges that the Bus Driver failed to secure the Passenger's wheelchair which, in turn, allowed the Passenger to attack Plaintiff. In essence, then, Plaintiff's Complaint alleges that Defendant had a duty to protect its customers from being physically assaulted, and that the Bus Driver's failure to secure the Passenger breached that duty as it allowed the Passenger to assault Plaintiff. (Complaint, ¶¶ 13-14, 17, 19).  Therefore, as was the case in *Burns*, this case involves a claim that WMATA failed to adequately protect one of its customers from a threat to her security. Accordingly, the Plaintiff's contention that the Defendant did not adequately secure the Passenger, *for the Plaintiff's protection*, implicates a quintessential governmental function because "protection of customers' security is within the purview of law enforcement." *Burns*, 488 F. Supp. 3d at 216-17.

11

The Court further finds that any course of action that Plaintiff avers that the Bus Driver negligently failed to take—including relocating, removing, or re-securing the Passenger—likewise falls under the spectrum of law enforcement activity, i.e., WMATA's exercise of a quintessential governmental function. *See Doe*, 453 F. Supp. 3d at 365.

In sum, the Court finds that Plaintiff's claims are based on the Defendant's alleged failure to protect one of its customers, which involves law enforcement activity, a quintessential governmental function.

Accordingly, even when viewing the facts in the light most favorable to Plaintiff, this Court has no jurisdiction over the Plaintiff's claims in Counts III and IV as they are barred by sovereign immunity. *See Davis*, 264 F. Supp. 3d at 11 (holding that the plaintiff's claims against WMATA were barred by sovereign immunity because they implicated law enforcement activity).[4]

C. <u>Analysis of Discretionary Act Argument</u>

Although the Court finds, as explained above, that Plaintiff's claims implicate law enforcement activity, the Court will assume *arguendo* that Plaintiff's claims do not relate to a "quintessential governmental function" and analyze whether Plaintiff's claims relate to a "discretionary act," for which WMATA retains immunity.

Here, too, the Court finds that Plaintiff's claims are barred by sovereign immunity because Plaintiff fails to point to a "statute, regulation, or policy [that] **specifically** prescribes a course of action for an employee to follow." *Pierce*, *supra*, at *4. (emphasis added).

In this case, Plaintiff contends that WMATA has a controlling policy in place that dictates how its employees must respond when a passenger displays "threatening behavior" on one of

---

[4] Because the Motion is granted based on sovereign immunity, the Court need not address the Defendant's summary judgment argument.

WMATA's buses. Specifically, Plaintiff contends that Defendant's "Customer Guide to MetroAccess," ("Customer Guide") provides the controlling policy WMATA's employees must follow when responding to "threatening behavior." (Opposition, p. 5).

Plaintiff points to the following language within the Defendant's Customer Guide to support its argument:

> MetroAccess service *may* be suspended when customers engage in inappropriate, aggressive, threatening or abusive behavior toward other customers, MetroAccess drivers or staff. Inappropriate behaviors like physical assault, verbal assault, sexual assault, indecent exposure, communicating a threat and illegal conduct *may* result in suspension. When this behavior is *determined* to be a threat to the safety of others, MetroAccess service will be immediately suspended, possibly requiring other transportation arrangements that day.

(*Id.*) (emphasis added).

Upon review of the Customer Guide, the Court finds Plaintiff's argument unavailing. By its plain language, the Customer Guide does not specify a "mandatory duty" or prescribe a particular course of action that Defendant must take when a customer is engaged in "threatening or abusive behavior." Instead, the Customer Guide advises Defendant's customers that Defendant's MetroAccess services "*may* be suspended," and that such suspension *may* take place only after such behavior "is *determined* to be a threat to the safety of others." (*Id.*) (emphasis added). It is apparent from the plain language of the Customer Guide that the decision to continue or suspend service is discretionary, with WMATA employees retaining discretion over: (1) determining when a customer's behavior threatens the safety of other passengers; and (2) determining whether to continue or suspend service. As such, the Customer Guide does not operate as "a statute, regulation, or policy [that] specifically prescribes a course of action." *See Pierce, supra*, at *4.

Furthermore, various courts have already held that operation schedules, e.g., whether to suspend or continue service, are discretionary, and decisions related thereto are entitled to sovereign immunity. *See, e.g.*, *United States v. Varig Airlines*, 467 U.S. 797, 808 (1984) (finding that acts such as "establishing plans, specifications or schedules of operations" are discretionary); *Sanders v. Wash. Metro. Area Transit Auth.*, 819 F.2d 1151, 1154 (D.C. Cir. 1987) (same); *Walen v. United States*, 246 F. Supp. 3d 449, 461 (D.D.C. 2017) (same); *Beatty v. Wash. Metro. Area Transit Auth.*, 860 F.2d 1117, 1127 (D.C. Cir. 1987) ("The cases teach that WMATA will not be liable for determinations made in establishing "plans, specifications *or schedules of operations*"") (emphasis added).[5]

Accordingly, even when viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff's claims are barred by sovereign immunity as they relate to a "discretionary act."

## IV.    CONCLUSION

For the foregoing reasons, the Motion is **GRANTED**. The Clerk of the Court shall enter judgment in favor of the Defendant as to Counts III, IV, and VI.[6]

---

[5] The Court also finds that the policy cited by Plaintiff is wholly irrelevant to the question of whether WMATA has a policy directing its employees to "secure" its passengers, i.e., a policy related to the allegations in Plaintiff's Complaint. The Customer Guide provision cited by Plaintiff does not, at any point, speak to a policy by Defendant to "secure" its customers when they are displaying "threatening behavior," and relates solely to WMATA's policy regarding the continuation or suspension of service in response to threatening behavior. As such, even when viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff fails to demonstrate that the instant dispute involves a ministerial as opposed to a discretionary act because Plaintiff points to an irrelevant policy. *See Whiteru v. Wash. Metro. Area Transit Auth.*, 258 F.Supp.3d 175, 184 (D.D.C. 2017) (finding, in part, that the cited policy, statute, or regulation must be *relevant*).

[6] In Count VI, the Plaintiff raised a claim of "respondeat superior." (Complaint, ¶¶ 26-28). However, respondeat superior is not by itself an independent cause of action, nor a cognizable legal claim. As such, Count VI is dismissed. *See Sterling v. Ourisman Chevrolet of Bowie Inc.*, 943 F. Supp. 2d 577, 601 (D. Md. 2013) ("[R]espondeat superior is not a separate cause of action"); *Alford v. Genesis Healthcare*, Civ. No. RDB-05-3278, 2007 WL 1073725, at *4 (D. Md. Apr. 9, 2007) (same).

The Clerk of the Court is further directed to **CLOSE** this case.

A separate Order will follow.

Dated: July 10, 2023.

_____ _____/s/_____
The Honorable Gina L. Simms
United States Magistrate Judge